Chief Justice Simpson
delivered the opinion of the Court.
On the 14th September, 1847, the appellee Jones, so]¿ to Mrs. Jane M. Johnston, thewifeof George W. Johnston, a tract of land in Christian county, with the growing crop thereon, and all his stock and farming implements, together with various articles of household furniture, and some other personal property, at the price of seven thousand five'hundred dollars. At the ’ time the sale was made, Jones, executed to Mrs. Johnston a writing obligatory, specifying the propertysold and the terms of the sale, in which it was stated that Mrs. Johnston, and her husband and Jones, the vendor, were to have the the joint use and occupancy of the farm, the dwelling house thereon, and the- other property sold until the first day of January, 1848, at which time the purchaser was to have the exclusive possession. It was further stipulated that Jones was to continue the use of the hands on the place to secure the crops, and to put in during the fall, such crops of grain as Johnston, might direct. He also bound himself to make a good title to the purchaser, by a deed with a covenant of general warranty. And it was recited in the instrument of writing, that Jones had received twenty-eight hundred dollars of the purchase money, and the bond of Mrs. Johnston, for the residue payable on the first day of January, 1848. ■ The twenty-eight hundred dollars was paid in the following manner, viz; four slaves at the price of eighteen hundred dollars, for which a bill of sale was executed in the joint names ®f Johnston and wife, but the name of Mrs. Johnston, *327 purports to have been signed by her husband George W. Johnston. The balance of the twenty-eight hundred dollars was paid by the sale of an interest in a tract of land, which interest belonged to Mrs. Johnston, in the land assigned to her mother as dower, and for a title to which a writing was executed in the same manner in the names of Johnston and wife. Johnston and wife, were married in 1847, some few months previous to the time, when they entered into the aforesaid contract with Jones. At the time of the marriage, Mrs.' Jones was the owner of a considerable property consisting mostly of slaves. The payment of the twenty-eight hundred dollars was made with her property. The purchase was made in her name, although her husband appears to have executed the writings jointly wdth her. The sale was made to the wife, because the husband had no property of his own; and it seemed to be contemplated by the parties, that the purchase money was to be paid by her, and the property purchased was to belong to, and be held by her, in the same manner that she held her other property.
Shortly after the sale was made, Johnston and wife entered upon the premises, and the parties had the joint use and occupancy of the property sold, according to the terms of the written argreement. In December following, and previous to the time, that Johnston and wife were to have the full possession of the property, the dwelling house, and some of the household furniture embraced in the sale, were destroyed by fire. A controversy then arose between the parties as to which of them should sustain the loss occasioned by the fire; and finally Johnston and wife refused to execute the contract, and brought a suit against Jones for the slaves that had been sold and delivered to him in part payment of the price of the land, and the other property purchased by Mrs. Johnston.
This suit in chancery was brought by Jones to enforce a specific execution of the contract, and on an *328 amended bill in which he-alleged that an action of det-inue had been brought against him by Johnston and wife for the four slaves ; he obtained an injunction to restrain them from the further prosecution of that suit.
The position a?, sumed by defendants below.
A ^purchaser of property by exe-cutory contract, let inlo possession is bound lo risk such inquiries as result irom- casualties unless such risk has been guarded against by express contract, and is entitled to anj; benefit which may accrue to the estate in the interim, (Sugden on vendors, 174, 2 Powell on contracts, 61, 6 vez S49.)
A specific execution of the contract was resisted by Johnston and wife in their answer, mainly on two grounds:
1st. That as the dwelling house had been burned down, Jones was unable to deliver full possession of the property purchased by Mrs. Johnston on the first day of January, 1848, according to the terms of his contract with her, and consequently she was under no obligations to perform the contract upon her part.
2d. That being a married woman when the contract was made, it was not obligatory upon her, and. could not be enforced by the chancellor.
As it respects the first ground relied upon, the property after the sale, belonged in equity to the purchaser, who having been put into the possession of it in conjunction with the vendor, had to risk such injuries as might result from mere casualties, unless such risk had been guarded against by an express stipulation in the contract. The only stipulation in the contract relied upon as having such an effect, is, that full possession of the property was to be given to the purchaser, on the first day of January, 1842. There was no agreement upon the part of the vendor to deliver the possession of the premises in the same condition they were at the time of the sale. He did not insure the property against damage from fire or other casualties, nor does the law impose upon him any such liability. The safety of property both real and personal, is at the risk of the owner, and the purchaser of real property by ex-ecutory contract, is the equitable owner of it, and has to sustain any accidental loss that may'occur after his purchase, and before the conveyance of the legal title; and on the other hand, he will be entitled to any benefit which may accrue to . the estate in the interim; (Sugden on vendors, 174. 2 Pow. on contracts, 61.) Paine vs Miller, (6 Ves. Jun., 349.)
Tne ge.neral doctrine is that a feme covert cannot make a valid or boundary contract—there are some exceptions.
Since live statute of 1846, (sess. acts 1645, 6 page 41,) slaves the property of the wife are regarded as real estate, <and do not vest absolute 3y in the husband as before the siatute,) and can only be disposed of by deed in the same manner as real esiaie—unless it be by written contract executed jointly, with the husband to pay for necessaries ’ for a member of the family.
A feme covert, Cannot make executoiy contract either for the purchase or sale of lands— nor sell her slaves except, os authorized bylaw, except in relation to her separate estate.
*329 But the second ground reiied upon, is of a more formidable character. The general doctrine is, that a married woman cannot enter into any valid or binding contract. She may execute a deed of conveyance, and transfer the title to her property in the mode designated by law, but this forms an exception to the general rule. She is in equity, in some respects regarded as a feme sole, in relation to the management and disposition of her separate estate., when she has any, and this is another exception to the general rule, upon the same subject. All the property belonging to the wife, is not however, regarded in law as her separate estate. Estate of the latter description is, entirely'of an equitable ■nature, the 1 egal title to which is vested in a trustee, -either by the instrument which creates the estate, cr by operation of law, and the use alone with a power of disposition is vested in the wife, subject to her separate control.
The property -owned by Mrs. Johston, is not' separate property .; it belonged to her, absolutely, at the time of her marriage, and as the law was, prior to the passage of the act of February, 1846. (Sess, acts 1845-6, page 42,) the title to the slaves, would have vested absolutely in her husband. But as she was married after the ' passage of ’that act, her slaves are to be regarded •as real estate, and can only be disposed of by deed in the same -manner, that husband and wife, máy dispose •of the lands of the wife. The act enables her to make -one description of contract, which is valid and binding, that is, a contract in writing executed jointly with her husband, to pay for necessaries furnished her, or any •member of her family,. In all other respects, her contracts stand as they did before the passage of that act; those that were .previously invalid still remain so, and cannot be enforced either in a Court of law or in chancery.
She cannot make an executory contract, either for the purchase or the sale of lands that will be obligatory upon her.- She cannot sell or dispose of her slaves, ex *330 cept in the manner authorized by law ; which must be by deed executed by her, and her husband, and acknowledged before the proper officer, in conformity with the requisitions of the law, in reference to the conveyance of the lands of the wife. In relation to her estate, she is not placed in a Court of equity, upon the same footing of a married woman, who is the owner of separate property. She has not the same power over her property, that a married woman has over her separate estate. She can make no disposition of it unless it be done in conjunction with her husband, and then only in the mode pointed out by law ; but in the the case of separate estate, the wife can act in her own name alone, independently of her husband, and can make contracts within the scope of her power over the property, which will be obligatory upon her, and which the chancellor will enforce.
Mrs. Johnston, had no separate estate properly so< denominated. Being a married woman, the contract she made with Jones, is not binding, upon her. The transfer of her slaves, in the manner in which the instrument was executed is invalid. The bond' for the purchase money cannot be enforced against her, nor can her estate be rendered liable for its payment. It follows according to these principles, that the decree of the Court below, executing the contract specifically, and subjecting her estate to the payment of the residue of the purchase money, is erroneous.
We have not regarded the estate belonging to Mrs. Johnston, as separate estate, nor do we think we would be authorized to do so, from any thing contained in the record.
It has indeed been argued, that such a conclusion, is not only authorized, but required by the state of the pleadings. The complainant alleged in his original bill, that the defendants had, before their intermarriage, entered into a written contract, by which the propei’ty of the wife was secured to her, as her separate estate, and the power conferred on her to deal with, and *331 dispose of it after marriage at her discretion; and that the defendants at the time of the sale, had both represented to the complainant, that a contract to that effect had been entered into by them. The defendants In their answer deny positively these allegations, but their denialis made by following the language of the-bill, and denying the truth of the statement as therein made. This, it is contended, is only a literal, and not a substantial traverse of the allegations of the bill, and’ that consequently this part of the bill should be taken as true. If the defendants answer contained no other,, but a general denial of the truth of the allegations, as-they were made in the bill, its sufficiency might be-questionable, but it contains the additional denial that the wife has any separate estate secured to her by any contract, devise, bequest or settlement, so that the denial is comprehensive enough to cover the whole-ground, and to meet and contradict fully, an averment that she has a separate estate, created by a contract made at any time or in any manner.
The husband war a patty to a contract for land made in the joint names of himself and wife, and executed notes-in their joint names, and agreed that the-title should be made to the wife and received & writing to that! effect from the vendor — h eld-: that the husband.-, eould be compelled specifioal? ly to execute the? contract.
Although Jones the vendor cannot have a specific execution of the contract decreed against the wife, he can, however, against the husband if he elect to do so. The husband was a party to the contract and executed in the joint names of himself and wife, a note for the payment of the purchase money; and with his assent it was agreed that the deed should be made to the wife, and a writing to that effect was executed by the vendor. So far as he is concerned, the vendor has a right to a specific execution of the contract. The length of possession established by the proof is sufficient evidence of title, and the vendor has manifested a desire to comi-ply with the contract, from the time it was executed ;: so that the only obstacle to its execution according to-the original intention of the parties, consists in the inability of the wife to make such a contract; and as-that obstacle does not release the husband from his responsibility, he is still bound by the agreement.
The husband ¡since the act of .1846, (sess acts lip5 6’ cannot wacuvhich win bind the ^slaves cept made in conjunciion wuh pmvided'by that »ot.
If the complainant.should elect to have a specific execution of the contract against the husband, the latter will be liable for all the purchase money, and the credit entered upon the note for its payment, .must be disregarded, unless the husband had the power to transfer to the vendor the slaves and land of his wife, or some interest in them, for which the credit, was allowed. , .
The first section of the act of 1846, already referred t0, provides expressly that the slaves which a married . . . in woman may have at the time oí her marriage, shall not be liable io the debts of her husband. If he cab by his act. render them liable for the payment of his debts, or the satisfaction of his contracts, this provision of the statute will be measurably defeated, The ob-v¡ous intention of the Legislature in the passage of the law in question, was to-secure to the wife during her life, the enjoyment of the land and slaves that belonged to her at the time of her marriage. To accomplish that object, it was declared that they should not be liable to the debts of the husband, and the mode in which they might be sold or disposed of, or rendered liable for debts created jointly by the husband and wife, was pointed out and. prescribed in the statute. The rational deduction is, that the Legislature did not intend that the husband should have any power to dispose of the property or any interest in it, except in the manner specified. This conclusion is fortified by the-consideration that a construction of the act, by which the husband is still deemed to be invested with the power to sell a life estate in the slaves and an interest in the land, in the lifetime of the wife, Would in a great degree frustrate the design of the- Legislature, which was evidently to protect her property from her husband’s creditors, and his acts; and to secure to her the use-of it during her life, unless she assented to it's disposition in the manner prescribed by the statute. When, as in the enactment of this law, the intention of the law-makers is manifest, and unambiguous; such an exposition should be given to the statute as will not *333 only harmonize with, but promote and secure the end and purpose intended te be accomplished by it- Such an exposition as deprives the husband of all power to sell or dispose of the property of the -wife, except in the mode prescribed by the statute, is consistent with both its letter and spirit, as well as promotive of its object and design, and is the one that must prevail. The consequence of this construction of the statute is, that the vendor aoquired no interest in the slaves or land of the wife by the writings executed by the husband in their joint names, and for which a credit was entered on the note for the payment of the purchase money.
Wher the husband sells th& (the marriage Place since tllB They may be recovered back by action of detinue.
The Court therefore erred in perpetuating the injunction against the prosecution of the action of deti-nue, brought in the names of the husband and wife, for. a recovery of the slaves of the wife in the possession of the vendor, as well as in rendering a decree by which the wife was inquired to convey the .title to them, and also her interest in the dower land of her mother, to the complainant, by a deed executed in the manner required by law to pass the title of femes covert in land and slaves.
Wherefore the decree is reversed, and cause remanded with directions to dissolve the complainant’s ,injunction, and to dismiss his bill against the wife, but to render a decree for a specific execution, of the contract against the husband, if the complainant elect to have it specifically executed against him ; in which-event the land will be liable and may be sold for the - payment of. the purchase money, and if it be insufficient for that' purpose, a decree may be rendered against the defend-, ant for the balance. Or the complainant may have a rescission of the conti’act, if he decline, a specific execution against the husband alone, when it will’ become necessary for the Court to refer the case to a commissioner, and to make such orders and decrees as may be necessary for the settlement of it according to equitable principles. But if a rescisión be deereed, the husband alone will be responsible for the balance due, if *334 any, upon the adjustment of the matters between the parties,
McLarning and Monroe for appellants; Morehead 4* Reed for appellee.