Case 15.                     Johnson and Wife *vs.* Green.

Ord. Pet.                    APPEAL FROM CHRISTIAN CIRCUIT.

1. If a married woman sue for, recover, and receive the value of a slave taken from her and converted, it as effectually deprives her of any property in the slave as if she had divested herself of her right by the forms prescribed by a deed executed *in pais*.
2. A married woman cannot divest herself of her title to slaves by contract, since the act of 1846, except in the manner prescribed by law. (*Johnson and wife vs. Jones*, 12 *B. Monroe*, 329–30.)

[The facts of the case are stated in the opinion of the court.—Rep.]

*McKee and Petree* for appellants—

This suit is brought by Johnson and wife to recover the value of a slave alledged to be the property of the wife, which it is said the appellee converted to his own use. The court instructed the jury to find for the defendant as in case of non-suit, upon the ground that a judgment for the value of the slave would not divest Mrs. Johnson of her title to the slave, as that could only be done in the mode pointed out by the statute. Judgment being rendered for the defendant the plaintiff has appealed.

The object of the statute of 1846 to protect the rights of married women was manifestly to prevent a prodigal husband from wasting the estate of his wife, and insure her a support out of her own property. The statute prescribes certain modes in which the wife may divest herself of title to her property, all intended as safeguards to her interest; but a state of case may arise, and has arisen in this case, in which the slave is taken to parts unknown, and it may be impossible for the plaintiff ever to ascertain where it is, while the party who has converted the property in violation of right, living in the immediate neighborhood, is freed from responsibility. Such a construction of the statute cannot be correct. If

there be no remedy in such a case against the wrong doer, the rights of married women will be poorly protected.

The mode prescribed by the statute for passing the title of married women in slaves, is, in form, the same as for passing the title of lands; but the nature of the property being entirely different, the rights growing out of them must necessarily differ. There can be no suit for the wrongful converson of real estate, it being immovable; not so with slaves. What other states might regard as a compliance with our statute in regard to the conveyance of title by a married woman in slaves may be doubtful, and particularly as our statutes are in conflict with the laws of many other states.

The defendant admits that he sold the negro and received the proceeds. No proof was offered to show that he had paid it to appellants, or either of them, and unless responsibility be entirely evaded by the construction given to the statute, there should be some proof of the payment of the money.

The defendant has wrongfully converted the negro and should be held responsible to the owner. A judgment for the value of the slave converted, if satisfied, will most certainly divest the plaintiff of all title to the slave. There was never any payment, but it is evident defendant relies upon Johnson's indebtedness to him as a payment, who is and was insolvent when he married Mrs. Johnson.

*B. & J. Monroe* for appellee—

The sole question presented for decision in this case is this: Can the husband and wife unite in a suit to recover the value of a slave which was the property of the wife, (having belonged to her at the time of her marriage, which occurred since 1846,) after she consented that the husband might sell the slave if he would purchase another with the proceeds of the sale?

JOHNSON & WIFE
*vs.*
GREEN.

The *2d section of the Revised Statutes* provides that "the husband and wife *may* sell and convey her chattel real or slaves in the same mode as the land of the wife may be sold and conveyed, and the proceeds shall be his unless otherwise expressly provided in the conveyance or the obligation of the purchaser." The employing of the term *may* in this section does not necessarily prohibit a sale without such form of conveyance, nor make it necessary that there should be any writing whatever.

The first section of the same statute, it is true, provides, "that marriage shall give to the husband, during the life of the wife, no estate or interest in her real estate, chattels real, or slaves owned at the time, or acquired by the marriage, except the use thereof, with power to rent the real estate for not more than three years at a time, and to hire the slaves in like manner for not more than one year," (See *Revised Statutes*, 387–8.) This section applies alone to the power of the husband acting independently of the wife, but not to a case where they act in concert, and unite in the act of selling a slave or disposing of a chattel real.

The proof of the plaintiff in this case shows very clearly that Mrs. Johnson consented to the sale of the negro, and that Johnson employed Green to sell her, which he did; and now they, in violation of good faith, seek to recover the value thereof from Green, the defendant. It is not right to permit these plaintiffs to take advantage of their own wrong, especially as the statute does not say in imperative terms that *no other mode of transfer shall pass the title of the wife*. We suppose this court will not permit such injustice unless imperatively required.

June 21.

Judge CRENSHAW delivered the opinion of the court:

This action is brought by Johnson and wife to recover from Green the proceeds or value of a negro girl, charged to be the property of Mrs. Johnson, which Green took and carried away to New Orleans,

and there sold, and converted the proceeds to his own use. This is the substance of the averments in the first petition. An amended petition was filed averring that Green took and carried away the slave and converted her to his own use.

Green denies that he took and carried away the girl and sold her *wrongfully*, and converted the proceeds to his own use; denies that she was the property of Mrs. Johnson, as averred, and states that the proceeds were paid over to Johnson and wife, and that the sale was made at their instance and request; acknowledges that, with the consent of Mrs. Johnson, he received from her husband the girl, as agent of the plaintiffs, and conveyed her to New Orleans and sold her as requested, and returned the proceeds to the plaintiffs, and denies that he owes them anything.

It was admitted by the defendant that the marriage between the plaintiffs took place since the passage of the act of 1846 to protect the rights of married women, and that said girl was the property of Mrs. Johnson before the marriage.

It also appeared in proof that Green carried away the girl, and the testimony conduces to show that she was delivered to Green by the husband of Mrs. Johnson; and it was further admitted by the defendant that in the year 1849, when the girl was sold by him, she was worth from $475 to $500.

Upon the aforesaid admissions and evidence, the court, on the motion of the defendant, instructed the jury to find as in case of non-suit, and they thereupon found for the defendant; and the only question presented for our consideration is, whether the court properly instructed the jury.

The girl, according to the proof and admissions, was the property of Mrs. Johnson at the time of her marriage, and, by virtue of the said act of 1846, she continued to be so after her marriage, and did not vest in her husband; and Mrs. Johnson could not be divested of her right, *in pais*, in any other mode than

that pointed out by the statute, which requires the same form, ceremonies, and solemnity as in the conveyance of real estate. That Mrs. Johnson had thus parted with her right it is not pretended. And the statute would be no protection to the rights of married women in slaves, if the slaves could be taken and carried away, and converted to the use of the wrong doer, and they have no redress for the wrong.

It has been suggested that the circuit court denied the right of recovery upon the ground that Mrs. Johnson's recovery against the defendant would not vest in the defendant nor his vendee, the right to the slave, because the statute enables her to pass her right in one way only, and that consequently her recovery in this action would be no bar to her recovering the slave wherever she might be found. And so, to allow her to recover in this suit, would enable her to obtain the value of the slave from the defendant, and then to seek and recover the slave also. If this position be true, a married woman could not, in any case, recover the *value* of her slave, but must recover the slave in kind, or be defeated altogether, because any recovery of the *value* would not preclude a recovery of the property itself—she not having parted with her right in the form prescribed by the statute. This position cannot be maintained.

The election of the wife to sue for, and recover, and receive in satisfaction, the value of her slave in a court of justice, instead of suing for and recovering the slave in kind, is as effectual to deprive her of her right to a slave as a deed, executed *in pais*, according to all the forms of the statute. The legislature never designed that a married woman might not as effectually deprive herself of her right to her slaves by the solemnities of a proceeding in a court of justice, had and carried on at her own instance, as by the forms of the statute. Any other construction of the statute would be suicidal—would defeat, and not promote, the intention of the legislature. The statute, instead of protecting the rights of mar-

1. If a married woman sue for, recover, and receive the value of a slave taken from her and converted, it as effectually deprives her of any property in the slave as if she had divested herself of her right by the forms prescribed by a deed executed *in pais*.

ried women, would, under such a construction, enable wrong doers to seize and carry away their slaves, and, unless they could afterwards find and recover the slaves in kind, deny them relief entirely. Surely a married woman can, under the solemnities of legal proceedings in court, deprive herself of her right to slaves, and also her title to land, by her own consent. And this as effectually as by deed *in pais*.

It is insisted, however, that no recovery can be had in this case, because, as assumed, Mrs. Johnson consented that her slave might be taken away and sold, and that, although the statute *authorizes* a married woman to pass her title to slaves as she may her title to real estate, it does not say that she cannot do it otherwise than by deed. It is a sufficient answer to this position that it was decided, in the case of *Johnson and wife vs. Jones*, 12 B Mon. 329–30, that a married woman could not *sell* her slaves except in the manner authorized by law.

2. A married woman cannot divest herself of her title to slaves by contract, since the act of 1846, except in the manner prescribed by law. (*Johnson and wife vs. Jones*, 12 B. Mon. 329–30.)

It is proved that Mrs. Johnson consented that the slave might be sold, provided another one was gotten with the proceeds. But whether this consent was given to the *defendant* does not appear, nor does it appear that the condition which she annexed to her consent had been complied with. There was nothing, therefore, in this aspect of the case, to preclude her from recovering, even if it be conceded that the parol consent of Mrs. Johnson, given to the defendant or any one else, with a condition complied with, or without condition, would affect her right of recovery. It is not necessary, nor do we decide this question. All that we decide is, that from the facts before the jury, the court erred in instructing them to find as in a case of a non-suit.

Wherefore, the judgment is reversed, and the cause remanded for a new trial and further proceedings not inconsistent with this opinion.