CASE 43—PETITION EQUITY—FEBRUARY 23.

# Tharp vs. Tharp's admr., &c.

### APPEAL FROM MADISON CIRCUIT COURT.

The husband can only dispose of the slaves of the wife in the same mode that the lands of the wife may be conveyed; and until so disposed of, the title of the wife is complete, subject to the marital rights of the husband. (12 *B. Mon.*, 329.) In this respect the act of 1845–6 and the Revised Statutes are similar.

Where a slave is advanced to a married woman by her father, the latter requiring her to pay to his other children a part of the value of the slave, which is paid by her husband, the proportion which the amount paid by the husband when the slave was advanced bears to the total value of such slave, furnishes the criterion by which to determine the extent of the respective interests of the husband and wife therein. The husband may sell his interest in the slave, or it may be reached, if necessary for the payment of his debts.

In 1856 a father advanced a slave to a married daughter, requiring her and her husband to pay to his other children $225, which was paid by the husband, who afterwards sold the slave for $950, the wife not uniting in the sale; and the purchaser sold the slave out of the State. Afterwards the husband bought a negro woman and three children at the price of $1,150, for his wife, and paid $900 that he had received from the sale of the first named slave, the title to remain in the vendor until the purchase money was all paid, and then to be made to the wife; the husband executed his note for the remainder and died insolvent, without having paid it, but was solvent in 1856. In his lifetime his wife promised to unite with him in making title to the slave sold by him, upon condition that the negro woman and children purchased by him were secured to her; but no title was ever made to either. The administrator of the husband filed a petition in equity to settle the estate and for a sale of his real estate and slaves, including the negro woman and children. The widow, the vendee of the husband in the sale of the first named slave, and the vendor of the woman and children, with the creditors, were all brought before the court by original and cross-petitions. The widow insists that she is entitled to the negro woman and children upon paying the remainder of the purchase money; and, if not, that she recover of the vendee of the husband the value of the slave advanced to her. *Held*—that the purchaser from the husband should not be held liable to the widow; and although, if the estate of the husband were solvent, and the rights of creditors not involved, the negro woman and children might be yielded to her upon the terms she demands, yet, in this case, equity requires a sale of said woman and children, and, out of the proceeds, the balance of the purchase money due from the husband be paid; then the widow should have such a proportion of the proceeds as the value of her interest in the slave advanced to her, and sold by her husband, bears to the aggregate price, and the remainder to go to the administrator of the husband.

BRECK & TURNER, for appellant, cited 1 *Metcalfe*, 31.

C. H. BRECK & DAVIS, on same side, cited *Revised Statutes*, chap. 17, art. 2, sec. 2; 3 *Bibb*, 15; 4 *J. J. Marshall*, 592; 1

*Bibb*, 609; 3 *J. J. Marshall*, 515; 1 *Marshall*, 47; 4 *Bibb*, 502.

CAPERTON, for appellees.

CHIEF JUSTICE STITES DELIVERED THE OPINION OF THE COURT:

Before 1856 George Tharp intermarried with Elizabeth Yates, a daughter of Elijah Yates, who soon afterwards advanced to Mrs. Tharp some slaves and personalty.

In 1856 the father made another advancement to Mrs. Tharp, of a female slave about thirteen years of age named Sarah, and he required his daughter and her husband, upon this last gift to the former, to pay to his other children the sum of $225 by way of making them equal with her. This was done, partly by the sale of some personal property claimed by the wife, but in the possession of the husband, and by the payment of $175 by the latter.

In 1858 Tharp sold the slave Sarah to Gentry for $950. In this sale the wife did not unite, nor was there any bill of sale made by the husband. Soon afterwards Gentry sold the slave to a trader, and she was taken from the State.

In a few weeks after the sale of Sarah to Gentry, Tharp bought from Black a negro woman, named América, with three children, at the price of $1,150—avowing, when he made the purchase, that it was for his wife; and it was agreed between Tharp and Black that the title to the slaves should remain in the latter until the whole of the purchase money was paid, and that, then, it was to be made to Mrs. Tharp. Tharp took possession of the slaves bought from Black, and paid him $900 that he received of Gentry, and gave him his note for the remainder, due 1st January, 1859. In the spring of 1859 Tharp died, without having paid this note.

It appears that in Tharp's lifetime his wife promised to unite with him in making title to Gentry for the girl Sarah, upon condition that Black secured to her América and her children. No title was thus made to Gentry, and Black never made title to Mrs. Tharp for América and her children. It seems also that, in 1856, Tharp was solvent, and had some estate beyond his liabilities.

Harris administered upon Tharp's estate, and, it being doubtful whether his estate would pay his debts, filed a petition for a sale of his real estate and slaves, including America and her children. Mrs. Tharp, Black, and Gentry, together with the creditors of the estate, were all brought before the court by the original and cross-petitions.

It was made evident by the master's report that the entire estate of Tharp would be insufficient for the payment of debts.

Mrs. Tharp claimed that she was entitled to the slave America and her children, upon the foregoing facts; and if not, that Gentry was liable to her for the value of the slave Sarah, and prayed relief accordingly.

Gentry denied her right to any relief against him, but insisted, if she was entitled to any, that he should have judgment over against the estate.

The administrator insisted that the slaves—America and children—were assets for the payment of debts, and denied the right of the widow or of Gentry to the relief sought.

The chancellor directed a sale of the slaves America and children, but reserved the right to dispose of the proceeds at a subsequent term. Of this order of sale Mrs. Tharp complains. She also complains that the chancellor did not award the slaves named, to her.

It seems to us that there can be but one view taken of the case.

The interest in the slave Sarah, which was given to Mrs. Tharp by her father, Yates, was acquired after the adoption of the Revised Statutes, and invested her with title to that extent beyond her husband's control. Her husband acquired no right whatever to such interest, except the use and right to hire the slave, as declared by *section* 1, *article* 2, *chapter* 47. (*2d vol. Stanton*, 8.)

He could only dispose of such property in the same mode that the land of the wife might be conveyed; and, until so disposed of, the title of the wife was complete, subject of course to his marital rights. This principle was fully discussed and settled in *Jones vs. Johnston*, (12 *B. Mon.*, 329,) a case which

arose under the act of 1845–46, (*sess. acts*, 1845–46, *page* 42,) which, in the respect mentioned, is similar to the Revised Statutes.

Here, however, the wife—now the widow of Tharp—was willing, during her husband's life, to convey the slave Sarah to the vendee of the husband, on the condition that the other slaves bought, in part, with the proceeds of the sale of Sarah, were conveyed to her, and now professes to be willing to do the same thing, and insists that, inasmuch as the last named slaves were bought for her use, and the title was to remain in Black for her, until the purchase money was fully paid, that she should be allowed to pay the remainder due Black and retain the slaves. And, if not, that Gentry should account to her for the present value of Sarah, which she charges was equal to $1,200.

If the estate of the husband was solvent, and the rights of creditors were not involved, it would be no doubt proper to require the slaves America and children to be yielded up to the widow upon the terms she demands. But in the present condition of things, equity would seem to require a different mode of settling the controversy.

One thing is clear. The interest she had in the slave advanced in 1856 is fully protected by the provisions of the Revised Statutes, *supra*. It is important, however, to determine what that interest was. If her husband had no interest in the slave other than such as grew out of their relations as husband and wife, then, upon his death, her title was complete and unincumbered, and her sole right to the slave could not be questioned.

But it is evident that he had an interest distinct and apart from that resulting from the marital relation. He advanced the $225 to equalize the other children of the father of the wife, which was necessary to be done in order to secure the gift from the latter to his wife. It is true that he only paid $175 in money, but the remainder was paid in property to which he was entitled, and which constituted a part of his estate. That proportion of the value of the slave cannot, therefore, be said to have been given by the father to the daughter.

It neither came to her by gift, descent, or bequest, but was the husband's property, bought and paid for with his means.

The remaining proportion of the value of the slave was the extent of the wife's interest therein. Beyond that she had no right that was not subordinate to the creditors of the husband, or that could not have been reached if necessary for the payment of his debts.

The interest owned by the husband passed by his sale to Gentry, and the latter could, in no view of the case, be deprived of that.

The extent of that interest is easily determined. The proportion which the amount paid by the husband, when the slave was advanced, would bear to her total value at the same time, furnishes the criterion. Thus, if what was paid by Tharp, at the time mentioned, was equal to one-third in value of the slave, then he would be the owner of one-third, and his wife entitled to the remainder ; and the vendée of the husband and the widow would be entitled in like proportion when the latter filed her cross-petition asserting her claim against Gentry. So that the value of the slave Sarah, when Mrs. Tharp asserted her claim, less the share of her husband's vendee, to be ascertained as just indicated, was the extent of her interest therein. That interest was in no wise affected by the sale of the slave to Gentry, and to it she was fully entitled.

The next inquiry is, how should Mrs. Tharp have been compensated for the interest of which she was deprived by the sale to Gentry. Ought she to look to Gentry, or to the slaves bought and paid for, mainly, by the money received from him for the slave Sarah?

No question is made as to the fairness of the sale from Tharp to Gentry. Nor is it pretended that Gentry did not pay the price which was agreed on for the slave he bought. It is also evident that $900 of the money paid by him was invested in the purchase of the slaves America and her children, the title to which was to be made to Mrs. Tharp, and which, according to Black's statement, was to be withheld until the note of Tharp, for the remainder, was paid.

Inasmuch as Gentry was a purchaser in good faith and for value, and as the money paid by him was invested by Tharp in property for the use of the wife, which she is willing to take upon equitable terms, and over which the chancellor has control, we think it would be unjust to hold Gentry liable to Mrs. Tharp, especially as it appears that the $900 paid by him to Tharp, and invested by the latter in the purchase of America and her children, will fully cover the interest of Mrs. Tharp in the slave Sarah, as indicated. And, therefore, we conclude that Mrs. Tharp should be relieved in some other mode than against Gentry.

No difficulty is perceived in determining that she ought to be paid the value of her interest in Sarah, nor that, to that extent, the slaves bought by her husband of Black should be first liable. Her right to be satisfied in this mode is very clear.

It is contended, however, that she ought to be allowed to keep the slaves mentioned, upon paying to Black the note given by her husband for the balance of the purchase money, without accounting, in any way, for the amount paid by him when Sarah was advanced by her father.

To allow her to take the benefit of the husband's interest in Sarah, would, to that extent, be manifestly unjust not only to creditors, but obviously so to Gentry, who, as we have seen, acquired that interest by his purchase.

We think, however, that to the extent of the value of her interest in Sarah—ascertained in the mode indicated—she had an interest in the slaves bought of Black. Her money was invested in that purchase by him and she is willing to ratify not only his sale of Sarah but his investment of the proceeds. The chancellor has control of the property, and no harm can result to the creditors from a recognition of her claim, or, at any rate, inasmuch as it is just and equitable, they have no right to complain.

Black's debt ought first to be paid out of the proceeds of the slaves. Then Mrs. Tharp should have such a proportion of the proceeds as the value of her interest in Sarah bears to the aggregate price, and the remainder, if any, to go to the administrator.

A sale of the slaves was proper to make this distribution, and the order directing it to be made is therefore *affirmed.*

No costs should be awarded in favor of Black or Gentry against appellant.

The administrator of Tharp will be entitled to his costs against appellant, Mrs. Tharp.