BOSTON AND MAINE RAILROAD *vs.* COUNTY OF MIDDLESEX.

Under Rev. Sts. *c.* 24, § 13, county commissioners have final jurisdiction of the question whether a highway which crosses a railroad shall be laid out over, under, or on a level with it.

In a deed to a railroad company of land covering only a portion of the width of their location, a reservation to the grantor and his assigns of the right to make a crossing over the land conveyed, to a new street on the opposite side of the railroad, creates an easement in the land conveyed, but does not confer a right of way over other land of the company, to the street referred to; and the deed is admissible in evidence to affect the estimate of damages for laying out a highway over the land, only to the extent of the easement created. And evidence of the occasional use of the land for a crossing by the grantor's assigns is inadmissible.

In estimating the damages sustained by a railroad company by the laying out of a highway across their railroad, the jury have no right to take into consideration any supposed future benefit to them from a probable increase of business in consequence of the establishment of the new highway; and evidence of payments of money by them for accidents at their several crossings, and of the comparative profit of the travel over their railroad from South Reading to Boston, and that from beyond Lawrence and Haverhill is inadmissible.

PETITION for a jury to make alterations in a highway laid out across the railroad of the petitioners, and to assess the damages sustained by them by the taking of their land in South Reading for the purpose.

At the trial before the sheriff, it appeared that the petitioners were the owners of the land in question, and had located and built their railroad over it, and that, by virtue of *St.* 1855, *c.* 141, the railroad was subsequently located anew over the same land; that in 1859 application was made to the county commissioners to lay out a highway across the railroad at grade, it being alleged that a bridge there was impracticable, so as to connect a private way upon the west side with a street upon the east side thereof; that the commissioners accordingly laid out the highway, and ordered that the grade, within the limits of the petitioners' land, should be on a level with the railroad for twenty five feet each way from the centre of the track, and thence gradually rise to the outside limits of the location. The petitioners asked the jury to alter the laying out of the highway in such manner that it should cross the railroad by a bridge; but the

sheriff ruled that the jury had not the power to make such alter-
ation, and excluded evidence offered to show that this could
easily be done.

It further appeared that in 1845 the land in question was pur-
chased by the petitioners, by separate deeds, of James Em-
erson and Daniel Norcross, whose lands met within the location
of the railroad, and that Norcross had at that time staked out a
private way over his land up to Emerson's line; and the deed
from Emerson contained the following clause : " Reserving the
right of making a crossing over the land conveyed, for myself
and to such persons as I or my heirs may sell the land which I
now own on the westerly side of the railroad, to pass to a new
street now laid out by Daniel Norcross, with cattle and teams,
as occasion may require." The deed of Norcross contained no
reservation. Some years afterwards, the way staked out by
Norcross was established as a highway by the town, up to the
line of the location of the railroad, and called Chestnut Street;
and Emerson's land on the westerly side of the railroad was
sold to different persons, who divided it into house lots, and
opened a private way over it, opposite to Chestnut Street.

Upon these facts the respondents contended that, under the
reservation in Emerson's deed, he and his grantees had a right
of way across the whole width of the land of the petitioners,
and that this right should be considered by the jury in estimating
the damages sustained by the petitioners by the taking of their
land for the highway, and the sheriff so ruled. The respondents
were also permitted, against the objection of the petitioners, to
inquire of various witnesses, if they ever saw any persons who
owned or occupied any of the land formerly owned by Emerson,
passing over the private crossing, from one side of the railroad
to the other.

The respondents also contended that the new highway would
cause the sale of many of the house lots into which the Emer-
son land was divided, and thus bring travel and business to the
railroad ; and they were allowed, against the objection of the
petitioners, to introduce evidence upon this subject.

For the purpose of showing that the crossing was not dan-

gerous, the respondents were allowed, against the objection of the petitioners, to ask the superintendent of the road, in cross-examination, how much the petitioners had paid for accidents between Reading and Boston within five years ; and what was the result of an estimate made by him of the comparative profit of the travel from South Reading to Boston, and that from beyond Lawrence and Haverhill.

The petitioners requested the sheriff to instruct the jury as follows :

1. If the laying out of the highway has caused any damage to the premises of the petitioner, the jury cannot diminish these damages on account of the reservation contained in the deed of Emerson, the county not holding under him, and the way not having been built or located by virtue or under the authority of the reservation.

2. If the jury find that this crossing will open the way to new lots of land adapted for buildings, any supposed future benefit which may accrue to the petitioners from any probable increase of passengers thereby, is not to be taken into account to diminish, or as a set-off against, the actual damages suffered by them by this location.

3. If the jury find that the railroad is located five rods wide at the crossing, and that the grade of the highway is laid out higher than the level of the railroad a part of the way in the location, such 'rise is illegal, and the jury are bound to reduce the grade to the level of the railroad throughout the whole width of the railroad location.

4. The petitioners' claim to the damages proved in this case is not to be affected, or the damages to be diminished, by any thing in the reservation, before the crossing therein mentioned has been made by Emerson, his heirs or grantees.

5. By virtue of the reservation no person is authorized to pass over any other land than that conveyed in the deed of Emerson to the railroad.

6. No person is authorized by said reservation to pass over the land so purchased of Emerson, unless he passes with cattle and team.

7. All private rights of crossing, when this highway was laid out, were wholly cut off and destroyed by the re-location, and the remedy therefor is pointed out by *St.* 1855, *c.* 141, authorizing the re-location.

8. The petitioners' claim to damages proved in this case is not to be diminished by anything in the reservation, until the crossing therein mentioned is made suitable for cattle and teams by persons other than the petitioners.

9. The reservation does not give to any person the right to pass over any other land than that conveyed in the deed to the petitioners.

10. The petitioners' claim to damages is not to be affected or diminished in any degree by the reservation.

But the sheriff refused to give any of the above instructions, but gave the following instructions to the jury, which were objected to by the petitioners:

1. The reservation of Emerson in his deed, which was accepted by the petitioners, is conclusive evidence against them, so that they are estopped from denying that there was such an existing right of way; and there was therefore an open way over the land of Norcross.

2. The petitioners, unless there has been some extinguishment of the right thus originally acquired by the grantor or his heirs, and all his assigns in the remaining land, cannot now set up that they were not liable to have such crossing made and used according to the true intent and meaning of the deed.

3. If the jury believe that there will be hereafter any benefit to the railroad company by the proposed street bringing more passengers to the railroad, by reason of the opening of new lots for building, they may reduce the damages so much.

4. If the reservation in the Emerson deed diminishes the value of the petitioners' premises, the jury may reduce their damages so much.

*D. S. Richardson & C. P. Judd,* for the petitioners. 1. The jury had authority to revise every judgment of the commissioners concerning the land, except that of common convenience and necessity. In illustration of their powers, see *Carpenter* v

*County Commissioners*, 21 Pick. 258; *State Lunatic Hospital* v *County of Worcester*, 1 Met. 437; *Hayward* v. *North Bridge-water*, 5 Gray, 65.   2. The sheriff was mistaken in his construction of the reservation in the deed of Emerson.   Sheppard's Touchstone, 80.   *Hurd* v. *Curtis*, 7 Met. 109.   *Thompson* v. *Gregory*, 4 Johns. 81.   *Provost* v. *Calder*, 2 Wend. 517.   *Dygert* v. *Matthews*, 11 Wend. 35.

*W. L. Brown*, for the respondents.

MERRICK, J.   A great number of questions in relation to the alleged inaccuracy of the rulings and instructions to the jury of the officer who presided at the trial are presented in his report. If it were only necessary to determine whether the verdict returned into court should be accepted or set aside, there would be no occasion now to advert to any other than those, which, upon examination, we have found to be erroneous.   But, as a new trial is the necessary consequence of the rejection of the verdict which has already been rendered, it is essential to secure the regularity of future proceedings in the case, and to prevent the repetition of exceptions which have already been taken to the rulings and directions of the sheriff upon questions which are likely hereafter to arise in the case, to consider and determine all those which are now before the court.

1. The petitioners desired that the jury should alter the laying out of the highway where it crosses their railroad location in such manner that it should pass over their road by a bridge; and they offered to produce evidence to show that this was a feasible method of constructing the highway, and would, if accomplished, greatly promote the security of all persons having occasion to use or travel upon either of the roads.   But the evidence so offered was rejected, upon the ground that the jury had no lawful authority to render a verdict requiring such alteration to be made.   This was correct.   When the public convenience and necessity require that a new highway shall be laid out across an existing railroad, the county commissioners in their respective counties are empowered to locate and establish it; and it is thereupon made their duty to determine whether it shall be laid out over, or under, or on a level with the railroad.

Their determination and direction relative to this whole subject are final and conclusive. *St.* 1857, *c.* 287, §§ 1, 4. Gen. Sts. *c.* 63, §§ 57, 58. A party aggrieved by the doings of the commissioners in the location of a highway may, upon proper preliminary proceedings, have a jury to determine the matter of his complaint, and the jury may make any alterations that are prayed for between the *termini*, so far as they shall think them necessary or proper. Rev. Sts. *c.* 24, § 13. Gen. Sts. *c.* 43, §§ 19, 20. This is all the authority that is given to them upon this subject, and it is to be exercised only within the limits to which it is restricted. *Lanesborough* v. *County Commissioners*, 22 Pick. 280. *Gloucester* v. *County Commissioners*, 3 Met. 375. The phrase "alterations between the *termini*," in the meaning of the words in their ordinary use, distinctly imports a change in the course or direction of the road, and not in the mode of its construction, or in the place and manner in which it is to be built and finished. In respect to this latter, the jury had no duty to perform.

2. The deed of Emerson to the petitioners was admissible in evidence for the purpose for which it was offered. The reservation contained in it created an easement in the land conveyed; and, as that necessarily detracted somewhat from the value of the unincumbered estate, it was essential to a just estimation of the injury done to the petitioners that it should be taken into consideration in determining the amount of damages which they were entitled to recover. *Tufts* v. *Charlestown*, 2 Gray, 271. S. C. 4 Gray, 537. The compensation to be recovered should certainly be limited to the right and interest which they had in the land; and although the incumbrance created by the reservation in the deed may be thought to have detracted very inconsiderably from the value of the estate of the petitioners, it ought not, for that reason, to be overlooked or disregarded in the estimate of the damages for which a verdict was to be rendered.

3. Of the ten several instructions, which the petitioners requested the presiding officer to give to the jury, the second, fifth and ninth, only, appear to embody correct legal propositions applicable to the evidence in the case. These should have been

28 *

adopted.   All the others were rightly refused; and for reasons so obvious that it seems unnecessary to go into a detailed statement of them, beyond what we have occasion to give upon the same topics in another connection.

4. It appears from the report that the location of the railroad of the petitioners was made partly upon land formerly belonging to Emerson, and partly upon land formerly belonging to Norcross.   Before any conveyance was made to the petitioners, Norcross had staked out a way upon his land up to the line of division between his own land and that of Emerson.   After that way had thus been so staked out, Emerson made his deed to the petitioners, reserving a right of way over the land conveyed by him, to himself, his heirs, and his assigns of his adjoining land. Norcross afterwards conveyed his land to the petitioners, but did not in his deed reserve to himself or to any one else any right whatever in the premises conveyed.   Upon this state of facts, the respondents contended that Emerson and his assigns of the adjoining tract had under his deed a right of way across the whole location, including the land described in the deed of Norcross as well as in his own; and that this right of making a crossing over the whole location ought to be considered by the jury as diminishing the damages sustained by the petitioners by the laying out of the highway.   This position was sustained by the sheriff, who instructed the jury in relation to it, that the reservation in the deed of Emerson was conclusive against the grantees, and estopped them from denying that there was such an existing way, or that there was an open way over the land which the petitioners held under the deed from Norcross.   This was manifestly incorrect.   A grantor may reserve to himself, his heirs and assigns, an easement or other right in the land which he conveys; but it is too obviously true to require argument to establish the proposition that, by a mere reservation of a part of that which belongs to himself, he cannot acquire any title to, or interest in an estate which is owned by another person.   And, as the respondents did not assume or profess that Emerson ever acquired any right of way over the land of Norcross, by prescription or in any manner except by the reservation in his own

deed the question, which they were allowed to propose to several of the witnesses, whether they had seen persons owning land which formerly belonged to him passing over the private crossing from one side of the railroad to the other, ought, upon the objection of the petitioners, to have been excluded. It was wholly immaterial to the issue. Such use, if it had ever occurred, may have been by permission of the railroad corporation, or a mere trespass under the claim of right. At any rate, it had no tendency to show that Emerson or his assigns had any easement or other interest in the land conveyed by Norcross to the petitioners, or that, as against them, there was any incumbrance upon it.

5. The supposed or possible advantage to the petitioners by an anticipated increase of trade and business on their railroad in consequence of the sale, likely to result from the laying out of the highway, of many of the house lots into which the land of Emerson had been divided, was too remote, inconsiderable and contingent to be made the basis of any proper estimate of the damages which they sustained by the laying out of a highway, or of the compensation which ought to be awarded to them. The evidence produced by the respondents upon that subject was inadmissible, and the inquiries made of witnesses in relation to it should have been disallowed. From these considerations it is apparent that the instruction given by the sheriff to the jury on this subject was erroneous. It was detrimental in its tendency to the interest of the petitioners, and their exception to it is well founded.

6. The payments, if any, which had been made by the petitioners, in consequence of accidents which had happened to persons and property at the several crossings of their road at points between Reading and Boston, could have no tendency to show that the crossing of the highway over their railroad, upon the lands conveyed to them by Emerson and Norcross, was not dangerous, and did not expose them to any hazard of incurring injury or loss thereby. The crossings of highways over railroads are necessarily so different in situation, in construction, and in surrounding objects; and accidents occurring

at such places are so variant in the combination of circumstances by which they are produced, as well as in the degree and importance of the resulting injurious consequences; and are so often caused by the failure to exercise that vigilance and care which should be used to guard against their occurrence, and by means of which they might be prevented, that mere payments made by a railroad corporation on account of damages done at one such crossing can afford no standard of comparison whereby to form a judgment as to the actual safety, or of the exposure of persons and property to peril, at any other. For these as well as other obvious reasons, the inquiries which the sheriff allowed to be made of witnesses in relation to such payments ought not to have been permitted.

7. It is impossible to see, in any aspect of the facts stated in the report, how the calculation or estimate of the superintendent of the road of the comparative profit of the South Reading travel, and of the travel from beyond Lawrence and Haverhill to and from Boston, could have any bearing upon the question of damages caused to the petitioners by the laying out of the highway over their location. Such an estimate would seem to have no tendency either to diminish or to enhance the amount for which the verdict of the jury should be returned. It was foreign to the issue to be determined; and all evidence concerning it ought to have been excluded. If it had any effect upon the jurors, it must have been injurious and improper; because it withdrew their attention from the real question in controversy, and occupied it with another upon which they were not called upon to render any decision.

8. The instruction that, unless there had been some extinguishment of the right reserved by Emerson to himself and to his heirs, and to his assigns of the remaining land, (which we understand the presiding officer to have meant by the phrase "originally acquired by the grantor," as he used it,) the petitioners could not afterwards set up that they were not liable to have such crossing made and used according to the true intent and meaning of the deed, was correct in terms, and would have been correct as applicable to the facts found upon the trial, if

the true effect and meaning of the reservation in the deed of Emerson had been accurately stated and explained to the jury. But in this, as has already been shown, the sheriff erred by ruling that under and by virtue of the reservation a right of way was acquired over the land of the petitioners, which they derived from the deed of Norcross. Considered in connection with, and as embracing this ruling as a part of it, the instruction given must be held to have been erroneous.

9. The further and last instruction that, " if the reservation in the Emerson deed diminishes the value of the petitioners' premises, the jury may reduce their damages so much," was, as an abstract proposition, correct. But it should have been accompanied by an accurate statement and explanation of the meaning and effect of the language by which that reservation was made, and of the limitation beyond which it could not be extended.

As the rulings and instructions of the sheriff, acting as the presiding officer at the trial, were, in the several instances above noticed, erroneous, the verdict must be set aside, and a certificate sent to the county commissioners to issue their warrant for summoning another jury.